AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**Purple Apple iPhone**<br>**Seized Under FP&F No. 2026250100023901-0022**<br>**(Target Device 1)** | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   26mj3493 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 841 and 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See attached Affidavit of HSI Task Force Officer Gabriela Nicasio

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Gabriela A. Nicasio*
_____
*Applicant's signature*

Gabriela Nicasio, HSI Task Force Officer
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:   06/10/2026
_____
*Judge's signature*

City and state:   San Diego, California     Hon. Brian J. White, U.S. Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A-1

### *Item to be Searched*

The item to be searched is as follows:

Purple Apple iPhone

Seized under FP&F No. 2026250100023901-0022

(**Target Device 1**)

**Target Device 1** is currently in the custody of Homeland Security Investigations at 880 Front Street Suite 3200 San Diego, California 92101.

## ATTACHMENT B

### *Items to be Seized*

Authorization to search the **Target Devices** as described in Attachments A-1 through A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below. The seizure and search of the **Target Devices** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, between the dates of **October 15, 2025, up to and including May 27, 2026**:

    a. tending to indicate efforts to smuggle or distribute federally controlled substances;

    b. tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the smuggling and/or import/distribute federally controlled substances;

    c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling and/or importation/distribution of federally controlled substances;

    d. tending to identify travel to or presence at locations involved in the smuggling and/or importation/distribution of federally controlled substances;

    e. tending to place in context, identify the creator, sender, or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 841 and 846, Conspiracy to Distribute Controlled Substances.

**AFFIDAVIT**

I, Gabriela Nicasio, a Task Force Officer with Homeland Security Investigations ("HSI") being duly sworn, hereby state as follows:

**I.**

**INTRODUCTION**

1. This affidavit supports an application for a warrant to search the following electronic Devices:

Purple Apple iPhone
Seized Under FP&F No. 2026250100023901-0022
(**Target Device 1**)

Black Apple iPhone
Seized Under FP&F No. 2026250100023901-0023
(**Target Device 2**)

Blue Apple iPhone
Seized Under FP&F No. 2026250100023901-0024
(**Target Device 3**)

(collectively referred to as the **Target Devices**). As further described in Attachment A-1 through A-3, and to seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841 and 846, Conspiracy to Distribute Controlled Substances, as further described in Attachment B. The requested warrant relates to an investigation and prosecution of Oscar Michael HERNANDEZ (hereinafter referred to as "HERNANDEZ") for criminal violations of the offenses identified above. The **Target Devices** are currently in the custody of Homeland Security Investigations at 880 Front St. Suite 3200 San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates, times, and amounts described are approximate.

//
//

## II.

## <u>EXPERIENCE AND TRAINING</u>

3.      I have been employed by United States Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule of Criminal procedure and have been a Federal Law Enforcement Officer for twenty-three years.  I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants.  I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

4.      During my tenure as a CBP Officer, I have participated in the investigation of numerous cases involving the importation of narcotics into the United States from Mexico, which have resulted in drug seizures, search warrants, and indictments. I have also participated in the investigation of federal cases involving the exportation of weapons and bulk currency from the United States to Mexico.

5.      My duties involved the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I have investigated cases related to narcotics trafficking and bulk currency smuggling with a focus on criminal organizations exploiting United States ports of entry in Southern California.

6.      I am currently working as a Homeland Security Investigations ("HSI") Task Force Officer ("TFO") assigned to the Cartel Investigations Team in San Diego, California. My duties as a TFO include investigating transnational criminal organizations involved in drug importation and distribution throughout the United States and federal money laundering violations.

7.      During the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits

of drug and bulk currency smuggler, in particular those who attempt to smuggle narcotics into the United States from Mexico and money couriers attempting to smuggling bulk currency through the Southern District of California into Mexico.

8.    This affidavit is based on my own investigation, my investigative team, oral and written reports by other law enforcement officers, physical surveillance, interviews, public records, database checks, searches, and other investigative techniques.

9.    Based upon my training and experience working with CBP and as an HSI TFO, consultations with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.    Drug traffickers, and their couriers often work in concert utilizing cellular/mobile telephones because they are mobile and provide instant access to calls, text messaging capabilities, web, and voice messages.

b.    Drug traffickers, and their couriers often use cellular/mobile telephones in order to arrange the transportation of their illegal cargo.

c.    Drug traffickers, and their couriers often use cellular/mobile telephones in order to actively monitor the progress of their illegal cargo while the conveyance is in transit.

d.    Drug traffickers, and their couriers often use cellular/mobile telephones in order to provide instructions and synchronize an exact drop off and/or pick up time between load drivers and stash house operators (or others) of their illegal cargo.

e.    Drug traffickers, and their couriers often use cellular/mobile telephones to notify or warn accomplices of law enforcement activity, including the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

10.    Based upon my training, experience, consultations with law enforcement officers experienced in money laundering investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can

and often contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  This information can be stored on disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the transportation of narcotics and bulk currency:

a.    tending to indicate efforts to smuggle bulk currency and/or distribute federally controlled substance;

b.    tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the smuggling of bulk currency and/or import/distribute federally controlled substances;

c.    tending to identify co-conspirators, criminal associates, or others involved in the smuggling of bulk currency and/or importation/distribution of federally controlled substances;

d.    tending to identify travel to or presence at locations involved in the smuggling of bulk currency and/or importation/distribution of federally controlled substances;

e.    tending to place in context, identify the creator, sender or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//
//
//
//
//
//

## III.

## FACTS SUPPORTING PROBABLE CAUSE

**A.    November to December 2025: Controlled Purchase of Cocaine Identify HERNANDEZ as the Person Supplying Cocaine**

11.    In November 2025, agents received information from NCIS that they had conducted multiple undercover purchases of narcotics from Rajab Qawasmi. Following this undercover purchase agents surveilled Qawasmi as he drove to 6333 College Grove Way, San Diego, California, and approached apartment 6112 belonging to Oscar Michael HERNANDEZ.

12.    Then, on November 13, 2025, HSI and NCIS agents conducted another undercover purchase of narcotics from Qawasmi. During the undercover purchase Qawasmi spoke about his cocaine supplier stating that he was affiliated with the Sinaloa Cartel and that he had a lot of narcotics in his residence. During the meeting, Qawasmi told the undercover agent (UCA) that he would need to take the UCA's money to his supplier to obtain the cocaine. The UCA told Qawasmi that he/she was hesitant to give Qawasmi the money for fear of being ripped off.

13.    The UCA then agreed to give Qawasmi half of the money up front so that Qawasmi could go and get the cocaine from his supplier. After the UCA gave Qawasmi half of the money, agents surveilled Qawasmi as he drove directly to HERNANDEZ's apartment complex. At this time, agents watched as HERNANDEZ walked from his apartment to Qawasmi's vehicle with a box in his hand. HERNANDEZ entered Qawasmi's vehicle and handed him the box. Qawasmi then drove back to the meeting location where the UCA was waiting. Qawasmi parked near the meet location and Qawasmi entered the UCA's vehicle carrying the same box Qawasmi had received from HERNANDEZ. Qawasmi gave the UCA the box which contained half a kilogram of a white powdery substance.

14.    In December 2025, the UCA again planned with Qawasmi to purchase one kilogram of cocaine on December 4, 2025. At approximately 2:01 PM, HERNANDEZ and

Qawasmi arrived separately at the UCA meeting location. Qawasmi and the UCA met and conducted the sale/purchase of 1 kilogram of a white powdery substance. Following the meeting, Qawasmi walked directly to HERNANDEZ and entered HERNANDEZ vehicle. At about 2:15 PM, Qawasmi exited HERNANDEZ' vehicle, at which time HERNANDEZ left the area.

**B.   Apple iCloud Warrant Return from HERNANDEZ' iCloud Account**

15.   On February 26, 2026, agents served a search warrant to Apple for the account associated to HERNANDEZ, hernandezo89@icloud.com. On March 22, 2026, agents received the return data from Apple for HERNANDEZ' iCloud Account.

16.   On the iCloud return, investigators found a photo/video that appeared to depict a brick package of cocaine. Additionally, a video was found of what appears to be HERNANDEZ handling multiple different types of firearms. The video shows a hand with tattoos manipulating multiple firearms and magazines. Agents were able to confirm that the tattoos on the hand in the video are consistent with the tattoos on HERNANDEZ' hands.

**C.   Arrest Warrant for Oscar Michael HERNANDEZ and Search Warrants of 2047 / 2049 Old Bend Road, El Cajon, California 92021**

17.   On May 5, 2026, the Honorable Michelle M. Pettit, United States Magistrate Judge, signed a federal arrest warrant 26-cr-1692-LL-1 for Oscar Michael HERNANDEZ in the Southern District of California.

18.   On May 21, 2026, agents obtained a federal residential search warrant signed by the Honorable Judge Daniel E. Butcher, United States Magistrate Judge, in the Southern District of California for 2047 and 2049 Old Bend Road, El Cajon, California 92021, the residence of Oscar Michael HERNANDEZ. These two addresses are two separate buildings on a single property. HERNANDEZ has used each of the two addresses at various times for various purposes over the years.

//
//
//

**D.      May 27, 2026, Arrest of Oscar Michael HERNANDEZ**

19.      On May 5, 2026, the Honorable Michelle M. Pettit, United States Magistrate Judge, signed a federal arrest warrant 26-cr-1692-LL-1 for Oscar Michael HERNANDEZ in the Southern District of California.

20.      On May 21, 2026, agents obtained a federal residential search warrant signed by the Honorable Judge Daniel E. Butcher, United States Magistrate Judge, in the Southern District of California for 2047 and 2049 Old Bend Road, El Cajon, California 92021, the residence of Oscar Michael HERNANDEZ.

21.      On May 27, 2026, at approximately 6:16 AM, agents initiated a knock and announce procedure to execute an arrest and search warrant at HERNANDEZ's residence.

22.      During a search of 2047 Old Bend Road, investigators discovered a field of marijuana inside, including a ventilation system and lighting setup consistent with a marijuana grow operation was observed. Investigators also seized the following items:

- Marijuana Plants 94.03 kgs (1 pallet)
- Marijuana 4.26 kgs (2 boxes)
- Marijuana hash oil jars 478.6 grams (1 bag)
- Grinder w/marijuana residue 1 trace (1 bag)
- Scale w/marijuana residue 1 trace (1 bag)

23.      During a search of 2049 Old Bend Road, investigators found a number of firearms, the **Target Devices**, and more than $27,000 in bulk currency. Investigators seized the times listed below:

- Bulk Cash $27,421 USD
- Red Springfield XD-9 Handgun
- Black/Silver Taurus Arms Pistol
- Zastava Arms Rifle
- Upper Reciever / Rifle Barrel
- American Tactical Assault Rifle
- Black Mac-10 Shotgun

- Black Glock 17
- 9MM Pistol Magazines (3 each)
- Rifle Magazines (2 each)
- Pistol Magazines (1 each)
- .40 Caliber Ammunition (9 each)
- 5.56 Caliber Ammunition (30 each)
- 9 MM Ammunition (13 each)
- 9MM Luger Ammunition (225 each)
- 7.62 Caliber Ammunition (40 each)
- Buck Shot Shotgun Ammunition (75 each)
- Bullet Proof Vest
- Psilocybin Gummies 164 grams
- Mushrooms 77.2 grams
- Miscellaneous Documents
- Purple iPhone
- Black iPhone
- Blue iPhone
- Mac Book Laptop
- Black iPad
- Silver Macbook Air Laptop
- Scales w/marijuana residue

24.     As to the **Target Devices**, agents conducted a search of 2049 Old Bend Road and discovered a purple Apple iPhone (**Target Device 1**) and a blue Apple iPhone (**Target Device 3**) in the bathroom area. Additionally, a black Apple iPhone (**Target Device 2**) was found in a nightstand. In addition to HERNANDEZ, one female (HERNANDEZ's sister) and four children also lived at 2049 Old Bend Road.

25.    HERNANDEZ's sister identified the three **Target Devices** as belonging to HERNANDEZ. HERNANDEZ was taken into custody, handcuffed and secured, then transported in a non-marked vehicle to the San Ysidro, California Port of Entry.

26.    Based on my training and experience, it is also not unusual for individuals, such as the defendant, to attempt to minimize the amount of time they were involved in their trafficking activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning **October 15, 2025, up to and including May 27, 2026**. This encompasses the time leading up to the controlled purchase where HERNANDEZ was seen delivering cocaine to Qawasmi through the date of his arrest.

## IV.

## METHODOLOGY

27.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic

data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## V.

## <u>PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE</u>

30. Law enforcement has not previously attempted to obtain the evidence sought by this warrant. However, as mentioned above, law enforcement did previously obtain a warrant to search HERNANDEZ's iCloud account associated with telephone number 619-386-0168. The contents of HERNANDEZ's iCloud account may include a portion of the data contained on one or more of the **Target Devices**.

//
//
//
//
//
//
//
//

## VI.

## CONCLUSION

38.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of the defendant's violations of Title 21, United States Code, Sections 841 and 846, Conspiracy to Distribute Controlled Substances. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1 through A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Gabriela A. Nicasio*
Task Force Officer Gabriela Nicasio
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 this 10th day of June 2026.

HONORABLE BRIAN J. WHITE
UNITED STATES MAGISTRATE JUDGE